**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| DAVID A. MUCKLOW, | ) | CASE NO. 5:25-cv-1403 |
| | ) | [Bankr. Case No. 23-60194] |
| | ) | |
| Appellant, | ) | CHIEF JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| WILLIAM T. DUNN, et al. | ) | |
| | ) | |
| | ) | |
| Appellees. | ) | |

This is an appeal of a bankruptcy court disgorgement order. Appellant David A. Mucklow ("Mucklow") is a licensed attorney who represented debtors and appellees William T. Dunn, Jr., and Jodi L. Dunn ("debtors" or the "Dunns") in their Chapter 13 bankruptcy proceedings. Mucklow submitted and secured confirmation of an Amended Chapter 13 Plan ("Amended Plan") which surrendered the Dunns' motorcycle. The Dunns, upset that they never consented to have their motorcycle surrendered in bankruptcy, terminated Mucklow as counsel, retained new counsel, and moved to disgorge his attorney's fees.

The bankruptcy court found that Mucklow failed to follow the Dunns' clear directive, which Mucklow acknowledged receiving, causing the Dunns to lose confidence in him and retain a new attorney. (Doc. No. 1 (Order Granting Motion to Disgorge), at 4–15.) As a consequence, the bankruptcy court ordered partial disgorgement of Mucklow's attorney fees. (*Id*.) Mucklow now appeals that order. (Doc. No. 1 (Notice of Appeal and Statement of Elections), at 1–3; Doc. No. 5 (Appellant Brief).) Upon review, the Court concludes that the bankruptcy court did not clearly err

in its factual findings and acted within its discretion to determine attorney compensation and require partial disgorgement of the attorney fees paid by the Dunns to Mucklow. Accordingly, the disgorgement order is **AFFIRMED** and this case is **DISMISSED** and closed.

## I.     FACTUAL BACKGROUND

Attorney Mucklow was retained by debtors, the Dunns, to represent them in a Chapter 13 proceeding. (Doc. No. 1, at 5.)[1] As part of that representation, Mucklow and his clients agreed to a "no-look" flat attorney fee of $3,050. (*See id.* at 12.) Mucklow filed a Chapter 13 Plan with the bankruptcy court. (*Id.* at 5.) The Chapter 13 Trustee objected to confirmation of that plan due to feasibility concerns, among them the Dunns' repeat arrearages on payments. (*See id.*) Mucklow responded by filing the Amended Plan on October 23, 2023, which provided for lower monthly payments while also surrendering the Dunns' luxury motorcycle. (*Id.*)

In late October, Mucklow discussed with the Dunns the status of their bankruptcy petition and their objectives going forward. (Doc. No. 1, at 8.) Mr. Dunn sent an email to Mucklow on October 27, 2023, in which he disapproved of the provision in the Amended Plan[2] surrendering his motorcycle: "[S]omewhere along the way there was questions about getting rid of this or that. And as we discussed in our conversation that's not the route I'm looking to go. I am not looking to give up anything I own even if it means I have to pay at 100%." (*Id.* at 8.)

On October 30, 2023, Mucklow emailed Mr. Dunn: "I told Candice [the legal assistant] we will prep this to do an amended 100% plan and not surrender the motorcycle." (*Id.* at 8 (citing

---

[1] Unless otherwise noted, all page number references are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

[2] Because of the Dunns' clear instructions (which Mucklow acknowledged that he received) about changing the Amended Plan, the bankruptcy court determined that it did not need to decide whether the Dunns gave Mucklow the authority to file the Amended Plan.

Docs. #135 pp. 8–9; #136-1, p.13; #144-1, p. 18)[3].) Mucklow, however, did not thereafter submit a second amended plan removing the motorcycle.

On December 15, 2023, Mucklow emailed the Chapter 13 Trustee's staff attorney, stating: "We amended the plan, surrendered the motorcycle, and lowered the payments from what the original plan payment was with the step-up. The original plan had a step up because of the motorcycle, but it is being surrendered." (Doc. No. 1, at 9 (citing Doc. #144-1, pp. 19, 21 & 24).) Mucklow successfully addressed the Trustee's feasibility concerns and the bankruptcy court approved and signed an Agreed Order Settling Objections to Conformation on December 20, 2023. (*See id.*)

On that same day (December 20, 2023), the bankruptcy court held a Confirmation Hearing and indicated that the Amended Plan would be confirmed. (*Id.*) Later that evening, Mucklow emailed Mr. Dunn to provide updates on the bankruptcy petition. Mucklow informed Mr. Dunn that "[t]he motorcycle is not being paid through the plan as it would render the plan unfeasible as we discussed previously[.]" (*Id.* at 9–10 (citing Doc. #147, p.7).) Stated differently, the soon-to-be-confirmed plan still provided for the surrender of the motorcycle. Mucklow reassured his client that his motorcycle could be recovered later if the Dunns brought their account current and made a lump payment using anticipated settlement funds from the Dunns' unrelated personal injury lawsuit. (*Id.* at 10.)

An upset Mr. Dunn responded the next day on December 21: "That is unfortunate Dave those adjustments were not talked over with us. As of now your services our [sic] no longer needed I have sought out other counsel." (*Id.* at 10 (citing Doc. #85).) Mrs. Dunn separately sent an email

---

[3] The Court includes the citation as it appears in appellant's filed copy of the bankruptcy court order, which cites to the bankruptcy court docket.

similarly expressing dissatisfaction that the motorcycle was being surrendered. (*Id.*)

The Dunns retained new counsel and attempted to file a second amended plan on December 27, 2023. (*Id.* at 7.) But they were too late. The bankruptcy court confirmed the Amended Plan on December 29, 2023. (*Id.*) The Dunns filed a Motion to Modify on February 9, 2024, seeking to retain their motorcycle. (*Id.*) That motion was granted. (*Id.*)

Subsequently, the Dunns filed a Motion to Disgorge Attorney Fees of Prior Attorney David Mucklow. (*Id.*) They asserted that Mucklow's fees exceeded the reasonable value of his services because "Mucklow filed and moved forward with confirmation of the Amended Plan without the approval of his clients[.]" (*Id.*) The Dunns sought full disgorgement of the no-look fee.

The bankruptcy court granted the motion in part. Its factual findings were:

> 1) Mr Dunn gave Attorney Mucklow clear directions about changing the Amended Plan; 2) Attorney Mucklow acknowledged that he had received that direction from the client and would comply; but, 3) for whatever reasons, Attorney Mucklow did not file an Amended Plan that complied with the directions he received and agreed to comply with.

(*Id.* at 11.) The court concluded that this caused injury to the Dunns because they "lost confidence in Attorney Mucklow and had to turn to new counsel" and "[n]ew counsel costs money[.]" (*Id.* at 14.) It further concluded that "[t]he [d]ebtors justifiably relied on their attorney's clear written statement that an amended Plan would be filed" and their decision to replace Mucklow with new counsel was "not unreasonable, given the circumstances." (*Id.*) The bankruptcy court balanced this harm with its acknowledgement that the petition clearly involved "a great deal of work . . . that was beneficial to the Debtors" and that "[a] very difficult Chapter 13 case was kept alive [by Mucklow] for almost a year." (*Id.*) It held that, under these facts, partial disgorgement was warranted, Mucklow must disgorge attorney fees in excess of $1,650, and no additional fees were to be paid to Mucklow. (*Id.* at 14–15.)

4

Appellant Mucklow filed his Notice of Appeal on June 25, 2025. (Doc. No. 1, at 1–3) and his brief in support on September 22, 2025. (Doc. No. 5.) No response in opposition was filed, and the deadline to respond has now passed. *See* Fed. R. Bankr. P. 8018(a)(2).

## II.      JURISDICTION

28 U.S.C. § 158(a) confers on a district court jurisdiction to hear appeals from final orders of bankruptcy judges. Here, Mucklow challenges a disgorgement order. A bankruptcy court's order regarding attorney compensation, including orders to disgorge attorney fees, is ordinarily a final order. *See In re Williams*, 357 B.R. 434, 437 (B.A.P. 6th Cir. 2007) (citation omitted); *see also Cupps & Garrison, LLC v. Rhiel (In re Two Gales, Inc.)*, 454 B.R. 427, 429 (B.A.P. 6th Cir. 2011) (finding that bankruptcy court's order directing law firm to disgorge fees was a final, appealable order). Accordingly, the Court has jurisdiction to consider this appeal.[4]

## III.      STANDARD OF REVIEW

An appeal under § 158(a) "shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts[.]" 28 U.S.C. § 158(c)(2). "[W]hen a district court acts as an appellate court, as it does when it reviews a bankruptcy proceeding, the district court is subject to the same limitations which are imposed upon any appellate tribunal." *In re Caldwell*, 851 F.2d 852, 857 (6th Cir. 1988).

Awards of attorney's fees and the determination of the reasonable amount of fees are issues committed to the sound discretion of the trial court. *In re Two Gales, Inc.*, 454 B.R. at 429 (citing *Am. Commercial Barge Lines Co. v. N.L.R.B.*, 758 F.2d 1109 (6th Cir. 1985)). Thus, a bankruptcy

---

[4] While it appears that Mucklow's notice of appeal was filed two days past the 14-day deadline established by Fed. R. Bankr. P. 8002(a)(5)(A)(i), that time limit is a claim-processing rule that is "forfeited if the party asserting the rule waits too long to raise the point." *See Kontrick v. Ryan*, 540 U.S. 443, 445, 124 S.Ct. 906, 157 L. Ed. 2d 867 (2004); *see also In re Tennial*, 978 F.3d 1022, 1025 (6th Cir. 2020) ("[T]he 14-day deadline created by Bankruptcy Rule 8002(a)(1) does not create a jurisdictional limit on the federal courts."). Since no party filed a response in opposition to Mucklow's appellate brief, any timeliness challenge is forfeited.

court's decisions on fee determinations—including disgorgement orders—are reviewed for abuse of discretion. *In re Big Rivers Elec. Corp.*, 355 F.3d 415, 429 (6th Cir. 2004) (citation omitted); *see also In re Boddy*, 950 F.2d 334, 336 (6th Cir. 1991) ("We will not reverse a bankruptcy court's award of fees unless there has been an abuse of discretion." (citation omitted)).

"An abuse of discretion is defined as a definite and firm conviction that the [court below] committed a clear error of judgment." *In re Williams*, 357 B.R. at 437 (internal quotations omitted) (alterations in original). Under this standard, the district court looks to "whether a reasonable person could agree with the bankruptcy court's decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion." *Id.* (internal quotations omitted). Decisions by the bankruptcy court will thus be disturbed only if they: (1) relied upon clearly erroneous findings of fact; (2) improperly applied governing law; or (3) used an erroneous legal standard. *In re Village Apothecary, Inc.*, 45 F.4th 940, 946 (6th Cir. 2022) (citation omitted).

## IV.    ANALYSIS

Mucklow presents three issues for review. First, he raises the issue of whether the bankruptcy court committed reversible error by failing to consider Fed. R. Bankr. P. 9011 when concluding that disgorgement was warranted. Second, he raises the issue of whether the order of disgorgement was appropriate in his case under governing law. And third, he raises the issue of whether the bankruptcy court correctly calculated the attorney fee amount to be disgorged.

The analysis of these three issues is best partitioned into two sections: (1) whether the bankruptcy court's holding that disgorgement was warranted relied on proper factual findings and properly applied governing law, and (2) whether the bankruptcy court's reduction of fees was calculated under the appropriate legal standard.

### a. Basis for whether Disgorgement was Warranted

Mucklow avers that the bankruptcy court was wrong to conclude that there were valid grounds for disgorgement because: (1) the bankruptcy court's key factual findings were erroneous, (2) Mucklow did not violate his professional duties and the bankruptcy court failed to consider Rule 9011 and other case law, and (3) the equitable doctrine of laches applied to the Dunns' motion to disgorge. The Court will address each argument in turn.

> 1) *The factual findings that Mucklow failed to follow his clients' directives were not clearly erroneous.*

Mucklow disputes bankruptcy court's factual finding that he had promised to comply with his clients' request to remove the motorcycle from the Amended Plan and then failed to act on that promise. Mucklow claims that he never *promised* to amend the plan. (*See* Doc. No. 5, at 12.) Rather, he merely agreed to "prep" an amendment removing the motorcycle, by which he meant he was "merely agreeing to undertake an investigation of whether an amendment was supported by the facts and was feasible." (*See* Doc. No. 5, at 22.)

A plain reading of Mucklow's correspondence—including acknowledging that he "will prep this to do an amended 100% plan and not to surrender the motorcycle" (B.R. Doc. No. 144-1, at 18)—is reasonably amenable to the bankruptcy court's finding that Mucklow made a promise in accordance with Mr. Dunn's directive that he would file a second amended plan wherein the motorcycle would not be surrendered. But Mucklow failed to file a second amended plan, and it was not until seven weeks later, on the evening of the day the confirmation hearing was held and the bankruptcy court indicated that the Amended Plan would be confirmed (which it did nine days later), that Mucklow informed the Dunns that he had not complied with their directive. (*See* Doc. No. 1, at 9–10.) Indeed, Mr. Dunn's reaction when Mucklow informed him of the unchanged

Amended Plan was: "That is unfortunate Dave those adjustments were not talked over with us." (*See* BR Doc. No. 147, at 7.)

In light of this record, the bankruptcy court's factual findings are not clearly erroneous. Though Mucklow may dispute the particulars of his intentions and his version of events related to correspondence with clients, he has not pointed to any factual findings that meet the high bar of being clearly erroneous. The Court therefore declines to disturb the bankruptcy court's factual findings.

> 2) *The bankruptcy court did not improperly apply Bankruptcy Rule 9011, the professional rules, or case law in holding that disgorgement was warranted.*

Mucklow next challenges the disgorgement on the basis that the bankruptcy court: (1) improperly applied the procedural rules; (2) failed to consider that Mucklow did not violate the professional rules; and (3) failed to consider relevant case law suggesting that his conduct was not serious enough to warrant disgorgement. Mucklow specifies that the bankruptcy court "failed to obey Bankruptcy Code Section 1325(a)(6) or Bankruptcy Rule 9011" and that "the Ohio ethics rules have not been violated[.]" (Doc. No. 5, at 24.)

11 U.S.C. § 1325(a)(6) permits a bankruptcy court to confirm a plan when "the debtor will be able to make all payments under the plan and [will] comply with the plan[.]" Rule 9011 provides that, by presenting to the bankruptcy court a petition for a plan, an attorney certifies that, to the best of their knowledge, "the claims, defenses, and other legal contentions are warranted by existing law[.]" Fed. R. Bankr. P. 9011(b)(2).

Mucklow posits that "the Debtors' plan was only feasible as amended and that a 100% plan, as requested by the Debtors to include the non-essential luxury motorcycle, was not feasible." (Doc No. 5, at 17.) Mucklow further avers that petitioning a plan as his clients instructed would not be warranted under established law, thus violating Rule 9011. (*Id.*) Thus, Mucklow challenges

the bankruptcy court's ruling "that Counsel violated the Ohio Rules of Professional Conduct" because it "only mentioned the first sentence of the professional rule while ignoring the remainder" and "did not reconcile the ethics rules with Bankruptcy Court Rule 9011." (*Id.*)

To begin with, Mucklow's briefing mischaracterizes the reasoning and findings of the bankruptcy court. The bankruptcy court did not ever make an explicit finding that Mucklow violated the professional rules. Nor did the bankruptcy court hold that Mucklow was required to file the exact plan as proposed by the Dunns, or any other particular plan for that matter.

Rather, the bankruptcy court took issue with Mucklow's act of promising to file a second amended plan that would not require surrendering the motorcycle, then failing to file said plan. (Doc. No. 1, at 13–14.) Instead, Mucklow followed through with the original Amended Plan to confirmation. Mucklow mislead his clients into believing that he would follow their directive. Once the Dunns realized Mucklow had not done so, they lost confidence in Mucklow and incurred additional legal fees in hiring new counsel to amend the plan to keep their motorcycle. Under those facts, the bankruptcy court found a sufficient basis to order disgorgement.

To be sure, the bankruptcy court did not appear to believe the proposed second amended plan was contrary to Rule 9011. It stated that "the commitment to file an amended Plan was proper, as 'a lawyer shall abide by a client's decisions concerning the objectives of representation.'" (*Id.* at 8 (citing Ohio Rules of Professional Conduct, ¶1.2(a) (eff. June 17, 2020)).) And the Dunns were later able to successfully modify their plan. (*See* Doc. No. 1, at 7.) That undermines Mucklow's claim that the Dunn's preferred plan was contrary to Rule 9011. But again, the disgorgement was based on Mucklow's promise to follow his clients' directive, the breach of that promise, and the additional expense the Dunns incurred in retaining new counsel to modify the confirmed plan.

Reviewing the bankruptcy court's conclusion that Mucklow's actions warranted disgorgement, this Court concludes that there was a proper application of the law regarding disgorgement under 11 U.S.C. §§ 329(b) and 330. Section 329 empowers a bankruptcy court to order disgorgement of attorney fees where "the attorney's compensation exceeds the reasonable value of such services[.]" *See In re Smith*, 436 B.R. 476, 482–83 (Bankr. N.D. Ohio 2010) (citation omitted). "The reasonableness of an attorney's compensation under § 329 is assessed with regards to the particular circumstances of each case." *Id.* at 483. Meanwhile, § 330 authorizes "reasonable compensation for actual, necessary services rendered" and is subject to § 329. *See In re Boddy*, 950 F.2d at 337 (quoting 11 U.S.C. § 330(a)(1)). "In order for the services of a debtor's attorney to be 'necessary,' they must benefit the debtor's estate." *In re Robinson*, 189 F. App'x 371, 374 (6th Cir. 2006) (citation omitted). "[A] court shall not allow compensation for 'unnecessary duplication of services.'" *Id.*

Mucklow may disagree that his fee was excessive. But the bankruptcy court had a reasonable basis for holding the fee was excessive and clearly articulated its reasoning for disgorgement. The bankruptcy court found that Mucklow, by telling his clients he would follow their directive and then not doing so, conducted himself improperly as an attorney and caused the Dunns to incur additional expense through new counsel. (Doc. No. 1, at 14.) It also, however, found that many of Mucklow's actions benefitted the Dunns. (*Id.*) Balancing the harms with the benefits, the bankruptcy court concluded that Mucklow's flat fee of $3,050 exceeded the reasonable value of his services. (*Id.*) Reasonable minds could conclude Mucklow's improper conduct—indeed, a breach of his duty to his clients by agreeing to their directive and then not following through—diminished the value of his services. Concluding that these facts warranted disgorgement was reasonable for the bankruptcy court.

That conclusion is not "contrary to the decisions of the courts in this district," as Mucklow posits. (Doc. No. 5, at 24.) Mucklow points out that cases for disgorgement often involve attorneys who fail to appear at hearings or miss critical deadlines. He avers that any alleged misconduct at issue in his case was not sufficiently egregious to warrant disgorgement and therefore the disgorgement order was an abuse of discretion.

Comparing Mucklow's conduct to other cases he views as more egregious does not detract from the reasonableness of the bankruptcy court's holding. Rather than bolster Mucklow's argument for reversal, the cases affirm the sound discretion afforded to bankruptcy courts in determining whether fees are excessive, especially when an attorney breached a duty to their client and caused them injury. *See In re Smith*, 436 B.R. at 483 (finding disgorgement to be "the proper remedy in this case" where attorney failed to appear at a hearing); *In re Palombi*, No. 22-br-11024, 2022 WL 3639535 at *2 (Bankr. N.D. Ohio Aug. 23, 2022) (same). They reiterate the fact that "[t]he reasonableness of attorney's compensation is determined with reference to the unique circumstances of each case." *In re Palombi*, 2022 WL 3639535, at *1 (citation omitted).

Failing to follow a client's directives after agreeing to do so, resulting in the clients' loss of confidence and retention of new counsel, is a patently sensible ground for disgorgement. Under those circumstances, the bankruptcy court's determination that a portion of Mucklow's flat fee should be disgorged relied on valid grounds, did not improperly apply governing law, and used the correct legal standard. Mucklow's averments regarding Rule 9011, the professional rules, and case law do not reveal any abuse of discretion.

11

3)  *The bankruptcy court did not improperly reject a laches defense.*

Finally, Mucklow argues that the Dunns' motion to disgorge was "untimely due to the equitable defense of laches." (Doc. No. 5, at 26.) He raised the laches defense in the bankruptcy court because "the Motion was filed a year after the Debtor's plan was confirmed and more than a year after it was originally proposed[.]" (Doc. No. 5, at 23; *see also* B.R. Doc. No. 136, at 6–7 (Mucklow's Response to Motion to Disgorge Attorney's Fees).)

A lower court's resolution of a laches question is reviewed on appeal for abuse of discretion. *City of Wyandotte v. Consol. Rail Corp.*, 262 F.3d 581, 589 (6th Cir. 2001); *Chirco v. Crosswinds Communities, Inc.*, 474 F.3d 227, 231 (6th Cir. 2007) (citation omitted). "[L]aches does not result from a mere lapse of time but from the fact that, during the lapse of time, changed circumstances inequitably work to the disadvantage or prejudice of another if the claim is now to be enforced." *Chirco*, 474 F.3d at 231 (quoting 11A Charles Allan Wright, Arther R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 2946 at 117 (2d ed. 1995)) (alteration in original).

Here, the bankruptcy court did not mention laches in its disgorgement order. The Court will construe that silence as an implicit rejection of the laches argument. *See In re Flanders*, No. 13-1456, 2015 WL 4641697, at *9 (10th Cir. BAP (Colo.) Aug. 5, 2015) ("The Defendants raised the issue of laches before the bankruptcy court, but the Order granting summary judgment does not discus laches. Thus, the bankruptcy court rejected, at least implicitly, the doctrine of laches as a basis for barring [plaintiffs'] Complaint."), *aff'd in part, remanded in part on other grounds*, 657 F. App'x 808, 810 n.1 (10th Cir. 2016).

Upon review, the bankruptcy court's rejection of the laches defense does not fall outside of the bounds of its discretionary purview. The Dunns' disgorgement motion was brought within

12

one year of when Mr. Dunn discovered Mucklow's failure to modify the Amended Plan. (*See* B.R. Doc. No. 135; Doc. No. 1, at 10.) The motion was brought while the bankruptcy matter was active before the bankruptcy judge. (*See generally* Doc. No. 1-3 (Docket Report for Bankruptcy Petition No. 23-60194).) Mucklow failed to explain why a one-year delay in filing the motion in a case that was still pending in the bankruptcy court went beyond a mere lapse of time or otherwise caused undue prejudice. This is especially so given Mucklow's detailed submission regarding what transpired throughout the bankruptcy proceedings. Even in the absence of a motion, "[b]ankruptcy courts have an independent duty to monitor and determine the reasonableness of attorney fees related to bankruptcy cases[.]" *In re Spear*, 636 B.R. at 769 (citing *In re Two Gales, Inc.*, 454 B.R. at 432–33) (further citation omitted).

Under these presented facts, along with the bankruptcy court's independent duty to review attorney fees for reasonableness, the bankruptcy court had good reason for rejecting the laches defense. There was no abuse of discretion in that implicit rejection.

**b. Calculation of Attorney Fees to be Disgorged**

Mucklow's final argument for reversal is that the bankruptcy court's ruling "fails to calculate the basis of the amount required to be turned over[.]" (Doc. No. 5, at 16.) Mucklow complains that "[nowhere] in the opinion/order does the Bankruptcy Court explain his math. There is no explanation as to how this amount of $1,650 was calculated." (*Id.* at 28.)

"[I]n assessing fees . . . courts are not required to act as 'green-eyeshade accountants' and 'achieve auditing perfection' but instead must simply [endeavor] to do 'rough justice.'" *The Ne. Ohio Coalition for the Homeless v. Husted*, 831 F.3d 686, 703 (6th Cir. 2016) (quoting *Fox v. Vice*, 563 U.S. 826, 838, 131 S. Ct. 2205, 180 L. Ed. 2d 45 (2011)). "This means that the court can rely on estimates based on its overall sense of a suit." *Id.* (internal quotations omitted). Determining

13

the reasonableness of attorney fees under the bankruptcy code requires a court to first calculate the "lodestar amount" and then look to "lodestar factors," including "tak[ing] into account all relevant factors[.]" *In re Village Apothecary, Inc.*, 45 F.4th at 947. Courts can rely on "lodestar factors" to adjust the award upward or downward to achieve a reasonable result. *Geier v. Sudquist*, 372 F.3d 784, 793 (6th Cir. 2004).

Upon review, the Court holds that the reduction of Mucklow's no-look fee by less than half was not an abuse of discretion. The bankruptcy court relied on the appropriate two-step legal standard and correctly applied governing law in making its downward revision of the fee.

The bankruptcy court began with reviewing the "no-look" flat fee of $3,050 that Mucklow charged and determining that the fee agreement was appropriate and within the presumptively reasonable guidelines for Chapter 13 cases. (Doc. No. 1, at 12.) That necessarily involved the application of the lodestar method because no-look fees are based on a typical hourly rate multiplied by the hours expected to be spent on a standard matter and are thus "precalculated lodestar." *See In re Spurlock*, 642 B.R. 269, 287 (S.D. Ohio 2022); *see also In re Williams*, 357 B.R. at 439 n.3 ("The Panel also believes that 'no look' fees are permissible and should be encouraged in appropriate circumstances." (citing *In re Boddy*, 950 F.2d at 338)).

The bankruptcy court then looked to other factors by balancing "the harm done to the Debtors" by Mucklow's breach of his promise to follow the Dunns' directives, resulting in hiring new counsel at the Dunn's personal expense, with the fact that Mucklow engaged in "a case in which a great deal of work was done that was beneficial to the Debtors" and "[a] very difficult Chapter 13 case was kept alive for almost a year." (Doc. No. 1 at 14.) Relying on these factors, it explained the reason for the downward revision and reduced the fee award by less than half to $1,650. That size of downward reduction was in line with precedent. *See In re Village Apothecary,*

14

*Inc.*, 45 F.4th at 952 ("[T]he bankruptcy court did not abuse its discretion by reducing the law firm's fees here by 50% based on the minimal results obtained."); *see also In re Smith*, 436 B.R. at 483 (disgorging over half of attorney fees); *In re Costello*, 150 B.R. 675, 681 (Bankr. E.D. Ky. 1992) (concluding that award of $1,500 was excessive and reducing to $750).

While this reduction may not have been as meticulously calculated as Mucklow may have desired, it was closely tethered to the circumstances of the case and sought to achieve "rough justice." *See The Ne. Ohio Coalition for the Homeless*, 831 F.3d at 703. The bankruptcy court's stated reasons for that reduction were not contrary to law. Moreover, the fact that the amount of the reduction was in line with other cases strongly supports the reasonableness of the holding.

The bankruptcy court applied the proper two-step legal standard and committed no improper application of governing law. Accordingly, the Court declines to disturb the bankruptcy court's fee reduction calculation.

## V.      CONCLUSION

The Court holds that the bankruptcy court made no clear errors in its findings of fact. The Court further holds that the bankruptcy court relied on appropriate legal standards and governing law in holding that disgorgement was warranted and in the calculation of its downward fee reduction. The bankruptcy court did not abuse its sound discretion to determine attorney compensation. For the foregoing reasons, the June 9, 2025, disgorgement order of the bankruptcy court (B.R. Doc. No. 158) is **AFFIRMED**. This case is **DISMISSED** and closed.

**IT IS SO ORDERED**.

Dated: March 19, 2026

**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

15